IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CAROLYN SAMPSON, | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) Case No.: 2:20-cv-02232-PD |
| HAGENS BERMAN SOBOL SHAPIRO LLP; KAY GUNDERSON REEVES; STEVE W. BERMAN, | ) |
| | ) Related Case: 2:11-cv-05782-PD |
| Defendants. | ) |

**PLAINTIFF CAROLYN SAMPSON'S CONSOLIDATED MEMORANDUM IN SUPPORT OF MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT AND RESPONSE TO THE DEFENDANTS' MOTIONS TO DISMISS UNDER FED. R. CIV. P. 12(b)(6) (DOC. 18, 21[1])**

---

[1] All arguments in this memoranda are made in reference to the Hagens Berman defendants' motion to dismiss. Doc. 18. The arguments are also generally applicable to Reeves' motion to dismiss under Fed. R. Civ. P. 12(b)(6). Doc. 21.

**TABLE OF CONTENTS**

Introduction………………………………..……………………….…..….3

I.     Legal Standards……………...………….……………….…..…...4

        A. Leave to Amend Complaint….………..….………....………......4

        B. Choice of Law……………….………………………….……....5

        C. Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)……………7

II.    Argument……………………………………….……..……......…8

        A. Sampson Should be Granted Leave to Amend her Complaint..…....8

        B. Pennsylvania Law Governs Sampson's Tort Claims………………..9

        C. Pennsylvania Law Governs the Punitive Damages Allegation…….11

        D. Defendants' Motion to Dismiss Should be Denied in Part………...13

            1. Count II: Negligent Infliction of Emotional Distress………...13

            2. Count III: Intentional Infliction of Emotional Distress…........14

            3. Count IV: Civil Conspiracy (Count VI in Initial Complaint …………………………………………….......…15

            4. Initial Complaint: Count IV (Fraud/Fraudulent Nondisclosure) and Count V (Breach of Contract/Covenant of Good Faith)……………..……………….……..……...………16

Conclusion…………………..………………….…….……..………………16

## INTRODUCTION

On August 27, 2020, the Hagens Berman defendants began producing documents in response to the requests for production served by plaintiff, Carolyn Sampson, on July 20, 2020. Boebel Decl. at ¶ 2-3. The Hagens Berman defendants ultimately made five productions with the final (small) production taking place on September 4, 2020. *Id.* at ¶ 3. The documents provide additional support for some claims and address certain of the pleading issues raised by the Hagens Berman defendants in their motion to dismiss. *Id.* at ¶ 8.

In particular, the documents establish the nature of the civil conspiracy and provide more detail regarding the who, what, when, and why. The documents also provide support for the intent aspects of the pleaded breach of fiduciary duty count. The viability of Sampson's negligent infliction of emotional distress claim turns on whether Pennsylvania or Minnesota law applies to her tort claims. Finally, the proposed First Amended Complaint does not replead Sampson's fraud and contract-based counts. *Id.* at ¶ 8.

In addition, Reeves and Sampson have agreed to a settlement that resolves Sampson's claim against Reeves and have confirmed the material terms of that settlement in written communications. *Id.* at ¶ 4. Counsel for Sampson and Reeves have sought to advise Magistrate Judge Rice of their settlement. *Id.* at ¶ 5. Sampson's proposed First Amended Complaint no longer names Reeves as a defendant and

clarifies certain aspects of her involvement as revealed through the discovery process.[2] *Id.* at ¶ 8.

Sampson requests that this Court grant her leave to file the proposed First Amended Complaint, Boebel Decl., Ex. 1, and deny the defendants' motions to dismiss (Doc. 18, 21) except with respect to counts IV and V (Fraud and Breach of Contract/Breach of the Covenant of Good Faith and Fair Dealing) in her initial Complaint, which Sampson agrees may be dismissed.

I. **LEGAL STANDARDS**

**A. Leave to Amend Complaint**

A plaintiff should be provided an opportunity to file an amended complaint if it appears that deficiencies in the initial complaint can be corrected. 2A J. Moore, Moore's Federal Practice ¶12.07 [2.-5], P.12-99 (2d ed. 1994); *In re Spree.com Corp.*, 2001 WL 1518242 (Bankr. E.D. Pa. 2001). Under this liberal pleading standard, courts should generally grant plaintiffs leave to amend their claims before dismissing a complaint that is merely deficient. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002); *Shane v. Fauver*, 213 F.3d 113, 116-17 (3d Cir. 2000).

---

[2] To avoid burdening the Court with repetitive requests to amend, Sampson requests leave to file her First Amended Complaint (without Reeves) despite that fact that Reeves' dismissal has not yet been formalized. Sampson will file the First Amended Complaint once Reeves' dismissal is formally requested and entered.

The Court should freely grant leave to amend a complaint "when justice so requires." Fed. R. Civ. P. 15(a)(2); *Fowler v. PMC Shadyside*, 578 F.3d 203, 212 n.6 (3d Cir. 2009) ("we note that the District Court inexplicably foreclosed Fowler from an opportunity to amend her Complaint so as to provide further specifics…"). The Court should grant leave to amend the complaint unless futile or prejudicial, even if not requested. *Adams v Gould, Inc.*, 739 F.2d 858, 868-870 (3d Cir. 1984) (reversing district court denial of motion to amend a complaint to assert a new legal theory); *Arthur v. Maersk, Inc.*, 434 F.3d 196, 204-2017 (3d Cir 2006) (reversing district court denial of motion to amend to add a new party approximately one year after initiation); *Alston v. Parker*, 363 F.3d 229, 235 (C.A.3 2004)) (reversing a district court for not *sua sponte* granting leave to amend). "Futility" invokes the 12(b)(6) standard upon the district court's notice of the complaint's deficiencies. *Davis v. Abington Memorial Hospital*, 765 F.3d 236, 244-245 (3d Cir. 2014) (citing *Krantz v. Prudential Investments Fund Management, LLC*, 144 F.3d 140, 144 (3d Cir. 2002).

### B. Choice of Law

In a diversity case, a Federal Court applies the choice of law rules of its home state. *Reginella Const. Co., Ltd. v. Travelers Cas. and Sur. Co. of Am.*, 949 F.Supp.2d 599, 609 (W.D. Pa. 2013). Pennsylvania courts use the "most significant relationship" test, which qualitatively weighs the parties' contacts with the forums

"according to their relation to the policies and interests underlying" the issues in dispute. *Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 231 (3d Cir.2007); *Am. Contract Bridge League v. Nationwide Mut. Fire Ins. Co.*, 752 F.2d 71, 74 (3d Cir.1985) (discussing *Griffith v. United Air Lines, Inc.*, 416 Pa. 1, 203 A.2d 796 (1964)).

A choice of law analysis is appropriate at the Rule 12(b)(6) stage when it is not dependent on factual issues that can be probed only with the assistance of a fully developed record. *Carton v. Gen. Motor Acceptance Corp.*, 611 F.3d 451, 454–55 (8th Cir.2010); *Snyder v. Farnam Companies, Inc.*, 792 F.Supp.2d 712, 718 (D.N.J.2011); *Cooper v. Samsung Electronics America, Inc.*, 374 Fed.Appx. 250, 257 n. 5 (3d Cir. 2010).

For tort claims, the Restatement looks to the contacts between the claims and the parties to find the jurisdiction with the "most significant relationship." Factors include:

- the place where injury occurred,
- the place where the conduct causing the injury occurred,
- the domicile, residence, nationality, place of incorporation and place of business of the parties,
- the place where the relationship, if any, between the parties is centered.

Restatement 2d (Conflict of Laws) § 145. "The factors enumerated in [the Restatement] should be evaluated on a qualitative rather than a quantitative

basis." *David B. Lilly Co. v. Fisher*, 18 F.3d 1112, 1119 (3d Cir.1994) (discussing sections 145 and 146 of the Restatement). The relative importance of the factors in each case "should be determined in light of the choice-of-law principles stated in § 6 [of the Restatement]." Restatement (Second) of Conflict of Laws § 148 cmt. e. Those principles are: "(1) the interests of interstate comity; (2) the interests of the parties; (3) the interests underlying the field of tort law; (4) the interests of judicial administration; and (5) the competing interests of the states." *P.V. ex rel. T.V. v. Camp Jaycee*, 962 A.2d 452, 463 (N.J. 2008).

### C. Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)

A motion to dismiss requires a two-part analysis. *Fowler v. PMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, the Court must accept factual allegations, and disregard legal conclusions or mere recitations of the elements. *Id*. Second, the Court must then determine whether the facts alleged make out a "plausible" claim. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

*Fowler* reiterated the appropriate motion to dismiss standard: "courts [must] accept all factual allegations as true, construe the Complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the Complaint, the plaintiff may be entitled to relief." *Fowler*, 578 F.3d at 210

(citation omitted). "Although Fowler's Complaint is not as rich with detail as some might prefer, it need only set forth sufficient facts to support plausible claims." *Id.* at 211-212.

"Even post-*Twombly*, it has been noted that a plaintiff is not required to establish the elements of a prima facie case but instead, need only put forth allegations that 'raise a reasonable expectation that discovery will reveal evidence of the necessary element.'" *Id.* at 213; (quoting *Graff v. Subbiah Cardiology Associates, Ltd.*, 2008 WL 2312671 (W.D. Pa. 2008). Thus, courts should not dismiss a complaint for failure to state a claim if it "contain[s] either direct or inferential allegations respecting all the material elements necessary to sustain recovery under *some* viable legal theory." *Montville Twp. v. Woodmont Builders LLC*, 2007 WL 2261567 at *2 (3d Cir. 2007) (internal citation omitted) (emphasis added). In fact, a plaintiff need not plead any causes of action (merely facts with request for relief). *See* 2 James Wm. Moore et al., Moore's Federal Practice P 8.04[3].

## II.  ARGUMENT

### A. Sampson Should be Granted Leave to Amend her Complaint

Sampson should be granted leave to amend because her proposed First Amended Complaint corrects certain alleged deficiencies identified in the Hagens Berman defendants' motion to dismiss. Doc. 18. Much of the additional information

was not available to Sampson when she submitted her initial Complaint. The additional allegations do not add claims, will not expand the scope of discovery, and will not require a change in the trial date or affect the Court's Scheduling Order in any way. The amendment simply clarifies the causes of action and adds additional facts to the allegations Sampson already made. The additional allegations include facts that the defendants already knew, but which, to a substantial degree, were unavailable to Sampson until discovery proceeded over the past two weeks. Boebel Decl. at ¶ 3, 8.

There is no prejudice to the defendants associated with the proposed First Amended Complaint as it will not affect the case schedule. In addition, Sampson's proposed First Amended Complaint will simplify the issues as the amendment removes both her fraud and contract-based claim counts. Sampson respectfully requests that she be granted leave to file her proposed First Amended Complaint.

### B. Pennsylvania Law Governs Sampson's Tort Claims

Two of the four Restatement factors favor application of Minnesota law (place of injury; domicile). Restatement 2d (Conflict of Laws) § 145. But the other two favor application of Pennsylvania substantive law (place of conduct; location where relationship is "centered"). *Id.* All the claims Sampson asserts arise out of the defendants' conduct in connection with the litigation of the *Johnson* case venued in Pennsylvania. Doc. 35. The genesis of the consolidated thalidomide litigation

brought by the Hagens Berman defendants was a Joint Prosecution Agreement (JPA). Ex. 1 at ¶ 13. The JPA, entered by Gordon Legal and Hagens Berman, envisions the Hagens Berman defendants substituting in as counsel in the *Johnson* case. *Id.* at ¶ 14. The JPA requires that Steve Berman and Hagens Berman attorney Nicholas Styant-Browne personally direct the strategy of thalidomide litigation in the United States. *Id.* at ¶ 15. The JPA also requires the Hagens Berman defendants to utilize media and other tools for purposes of "client collection" to bring additional claims in the Pennsylvania courts. *Id.* at ¶ 16. The purpose of the JPA is to facilitate "thalidomide litigation" in the United States, *i.e.* in Courts of Pennsylvania. *Id.* at ¶ 13. The JPA does not focus on individual clients, but rather discusses "client collection" generally. *Id.* at ¶ 16.

Defendants rely heavily on Sampson's residence in Minnesota and that she was harmed in her home state. But under the circumstances here, those facts are not dispositive. Part of the tragedy of this case is that Hagens Berman's own clients, including Sampson, were simply incidental to the project of bringing thalidomide litigation in the United States. The JPA—the foundational document behind the sprawling *Johnson* case—does not mention and does not care about the location of clients if "thalidomide litigation" can be brought in the United States.

It is certainly true that Minnesota has an interest protecting its own residents from harm. But Pennsylvania has a similar interest in protecting litigants in its Courts

from harm resulting from the use of its Court systems. *Crossland Sav. FSB v. Rockwood Ins. Co.,* 692 F.Supp. 1510, 1512 (S.D.N.Y.1988) (concluding that a state's interest in regulating conduct within its borders outweighs another state's interest in regulating its licensed professionals). The conduct underlying and giving rise to Sampson's claims took place in Pennsylvania, and the relationship between Sampson and the defendants is centered in Pennsylvania. Restatement 2d (Conflict of Laws) § 145. The defendants sought out Pennsylvania; the civil conspiracy was directed at filing thalidomide litigation in Pennsylvania; Sampson was invited into litigation to be filed in Pennsylvania; and the harm that Sampson experienced was caused by her participation in the Pennsylvania litigation. The center of gravity of Sampson's tort claims is Pennsylvania, not Minnesota.

### C. Pennsylvania Law Governs the Punitive Damages Allegation

Even if this Court were to find that Minnesota law should apply to some, or all, of Sampson's tort claims, Pennsylvania law should govern the punitive damages allegation. Choice of law is issue specific and different substantive law may apply to different issues in the same case. *Berg Chilling Sys., Inc. v. Hull Corp.*, 435 F.3d 455, 462 (3d Cir. 2006) ("choice of law analysis is issue-specific, different states' laws may apply to different issues in a single case, a principle known as 'depecage.'"); *Knipe v. SmithKline Beecham*, 583 F.Supp.2d 602, 638 (E.D. Pa. 2008) (declining to apply different substantive law of punitive damages where state

statutory scheme applied to underlying claims). Minnesota and Pennsylvania substantive law both recognize that breach of fiduciary duty can give rise to punitive damages. *Evans v. Blesi*, 345 N.W.2d 775, 781 (Minn. Ct. App. 1984) (ordering entry of judgment for punitive damages in connection with a fiduciary duty claim); *McDermott v. Party City Corp.*, 11 F.Supp.2d 612, 630-631 (E.D. Pa 1998) (upholding jury award of punitive damages for breach of fiduciary duty under Pennsylvania law).

Minnesota's punitive damages statutes are designed to keep unworthy punitive damages allegations out of its Courts. *Coy v. No Limits Educ.*, 2016 WL 7888047 at * 6 (D. Minn. April 1, 2016) (" Section 549.191 requires the court to perform a gatekeeping function to screen out 'unmeritorious claims for punitive damages.'"). Here, applying Pennsylvania substantive law to the issue of punitive damages does not put Minnesota's statutory scheme at risk. Punitive damages are, by definition, not compensatory. Minnesota's interest with respect to punishing the defendants is minimal as Sampson entitlement to punitive damages will necessarily depend on her receipt of compensatory damages. *McDermott*, 11 F.Supp.2d at 630 ("the award of punitive damages is intended to satisfy a public policy purpose beyond compensation to the injured party…").

Pennsylvania, however, has a significant interest in potential punishment of the defendants. The defendants directed the full scope of their misconduct toward

Pennsylvania. Sampson's residence in Minnesota is largely incidental. Thalidomide litigants across the United States likely experienced harm similar to her own. It was the Courts of Pennsylvania that were the target of the Joint Prosecution Agreement, and Pennsylvania has the greatest interest in punishing the use and abuse of its Courts as a vehicle to harm litigants.

### D. Defendants' Motion to Dismiss Should be Denied in Part

When applying the correct standard, Sampson's proposed First Amended Complaint is sufficiently specific and states plausible claims for relief. The Hagens Berman defendants do not challenge Count I of Sampson's Complaint (initial or proposed First Amended Complaint), and therefore her claim for breach of fiduciary duty may proceed.

*1. Count II: Negligent Infliction of Emotional Distress*

Count II of Sampson's proposed First Amended Complaint presents the most significant conflict of law between Minnesota and Pennsylvania. Minnesota does not recognize negligent infliction of emotional distress in the absence of an allegation that the claimant was in the "zone of danger" of a physical impact.[3] *Engler v. Ill. Farmers Ins. Co.*, 706 N.W.2d 764, 767 (Minn. 2005). Pennsylvania does, however, recognize a claim for negligent infliction of emotional distress where the defendant

---

[3] Minnesota does, however, recognize a plaintiff's ability to recover emotional distress damages for "willful, wanton, or malicious" conduct. *Lickeig v. Alderson, Ondov, Leonard & Sween P.A.*, 556 N.W.2d 557, 560 (Minn. 1996).

owes the plaintiff a fiduciary duty. *Toney v. Chester Co. Hosp.*, 961 A.2d 192, 197-98 (Pa. Super. 2008) (noting that claim may be pleaded where "the defendant had a contractual or fiduciary duty toward the plaintiff"). A central tenet of Sampson's proposed First Amended Complaint is that the defendants failed to uphold their fiduciary duties causing her severe emotional distress. Sampson's proposed First Amended Complaint alleges these facts specifically and clearly. Defendants do not argue that Count II should be dismissed under Pennsylvania law.

    2. *Count III: Intentional Infliction of Emotional Distress*

Defendants' position on intentional infliction of emotional distress again focuses on Minnesota law. Defendants assert that emotional distress claims are disfavored and that mere failures to inform are not actionable. Doc. 18 at 18-19. But Sampson's proposed First Amended Complaint notes that defendants were on notice that Sampson's involvement in the *Johnson* case was "extremely stressful" and that Sampson was suffering from potentially anxiety-induced chest pains related to her "thalidomide journey." Ex. 1 at ¶ 42. Despite this knowledge, the defendants proceeded with litigation. *Id*. at ¶ 16. And despite their fiduciary obligations, they stripped Sampson of the information necessary to choose to end the litigation once the cases were consolidated in Federal Court—an outcome that compromised the viability of the litigation according to both Berman and Reeves in 2012 and 2013. *Id*. at ¶ 47-49. It is within this context that defendants' conduct must be measured.

Under Pennsylvania law, the required standard for extreme and outrageous conduct is relaxed when a "special relationship" is in place. *Bradshaw v. General Motors Corp.*, 805 F.2d 110, 114 (3d. Cir. 1986) *overruled on other grounds Yellow Freight Sys., Inc. v. Donnelly*, 494 U.S. 820, 822 n.2 (1990). For example, in *Fair v. Negley*, the Superior Court allowed the plaintiff to pursue a claim for intentional infliction of emotional distress related to a landlord's violation of the implied warranty of habitability. 390 A.2d 240 (Pa. Super. Ct. 1978). A reasonable person would find seven years of unnecessary litigation, with all the stress and anxiety that active litigation entails, severely distressing by itself. But to have been led there by fiduciaries who held a position of trust is not the "mere insults, indignities, threats, annoyances, petty oppressions, and other trivialities" that the requirement of extreme and outrageous conduct is meant to restrict. Restatement (Second) of Torts § 46.

Sampson's proposed First Amended Complaint sufficiently pleads the elements of count III.

*3. Count IV: Civil Conspiracy (Count VI in Initial Complaint)*

The elements of civil conspiracy are substantially the same under the law of both Minnesota and Pennsylvania. *Thompson Coal Co. v. Pike Coal Co.*, 412 A.2d 466, 472 (Pa. 1979) ("To prove a civil conspiracy, it must be shown that two or more persons combined or agreed with intent to do an unlawful act or to do an otherwise lawful act by unlawful means."); *Buetow v. A.L.S. Enters., Inc.*, 564 F.Supp.2d 1038,

1041 (D. Minn. 2008). The proposed First Amended Complaint alleges that the JPA represented an agreement that Gordon Legal and Hagens Berman entered on or about August 30, 2020. Boebel Decl., Ex. 1 at ¶ 13.  While filing litigation is certainly not unlawful *per se*, the unlawful means was filing cases requiring individualized allegations relating to the statute of limitations based on a template rather than making allegations tailored to the knowledge and understanding of each plaintiff. *Id.* at ¶ 45, 90. The need for such allegations was recognized by "Hagens Berman, Berman, Reeves, and Gordon Legal," but they agreed to proceed with their general allegations, whether or not individually applicable to Sampson. *Id.* at ¶ 89. The proposed First Amended Complaint adequately alleges the existence of a civil conspiracy.

> 4. *Initial Complaint: Count IV (Fraud/Fraudulent Nondisclosure) and Count V (Breach of Contract/Covenant of Good Faith)*

Sampson is not continuing to pursue counts IV and V set out in her initial Complaint. She has not repleaded the counts in her proposed First Amended Complaint and does not object to their dismissal.

## CONCLUSION

For at least the reasons set forth above, Sampson's Motion for Leave to File a First Amended Complaint should be granted, and the defendants' motions to dismiss (doc. 18, 21) should be denied in part.

Dated:  September 8, 2020

/s/ *Nicholas S. Boebel*
Nicholas S. Boebel (pro hac vice)
**Hansen Reynolds LLC**
225 South Sixth Street, Suite 3900
Minneapolis, MN 55402
Telephone: (206) 268-9320
nboebel@hansenreynolds.com

Matthew Weisberg
Pennsylvania Bar No. 85570
WEISBERG LAW PC
7 South Morton Ave.
Morton, PA 19070
610-690-0801
Fax: 610-690-0880
Email: mweisberg@weisberglawoffices.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on September 8, 2020, the foregoing memorandum was filed electronically and served on all counsel of record via the Court's CM/ECF system.

Date: September 8, 2020

/s/ *Nicholas S. Boebel*
Nicholas S. Boebel