IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CAROLYN SAMPSON, | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) Case No.: 2:20-cv-02232-PD |
| HAGENS BERMAN SOBOL SHAPIRO LLP; KAY GUNDERSON REEVES; STEVE W. BERMAN, | ) |
| | ) Related Case: 2:11-cv-05782-PD |
| Defendants. | ) |

**PLAINTIFF CAROLYN SAMPSON'S RESPONSE TO THE HAGENS BERMAN DEFENDANTS' EMERGENCY MOTION TO STAY PENDING DISPOSITION OF PETITION FOR WRIT OF MANDAMUS**

## INTRODUCTION

The most interesting thing about the Hagens Berman's defendants' emergency motion to stay is how there is no emergency. Yesterday was no different than the day before, a week ago, or nearly two weeks ago when the Court entered its Order denying defendants' motion to change venue.[1] Doc. 35.

## ARGUMENT

### a. The Defendants are Unlikely to Prevail on Their Mandamus Petition Because on these Facts, the Forum-Selection Clause does Not Apply to Tort Claims

In its opposition to defendants' motion transfer, plaintiff argued, in the alternative and *inter alia* 1) that under *Texas* law the forum-selection clause was, at most, ambiguous as to whether it applied to tort claims and should, therefore, be construed against the drafter and limited to contract claims only; *and/or* 2) that there were indications of overreach in in connection with the forum-selection clause and that, if the Court was not immediately inclined to find overreaching, the Court should await a full record before ruling on its validity. Doc. 25 at 10-20.  Defendants sum up these positions as follows: "[plaintiff] argued only that the Engagement Agreement's forum-selection clause is invalid (thus waiving other arguments...")." Doc. 49 at 7.

---

[1] Defendants did not request reconsideration or for the Court to provide a fuller explanation of its reasons for decision during this period.

That characterization is flatly false. Doc. 25 at 19-20 (suggesting that the Court defer ruling on the question of validity until it had "all material facts"). The majority of plaintiff's argument related to the *scope* of the forum-selection clause—a question of *Texas* rather than Federal law. Under *Texas* law, the terms of an attorney engagement agreement must "be construed from the standpoint of a reasonable person in the *client's circumstances*." *Falk & Fish, L.L.P. v. Pinkston's Lawnmower and Equipment, Inc.*, 317 S.W.3d 523, 529-30 (2010) (emphasis added) *citing* Restatement (Third) of the Law Governing Lawyers § 18 cmt. H.

Plaintiff's response to defendants' motion to transfer venue to the Northern District of Texas included a substantial and substantive analysis of the text of the engagement agreement, the structure of the clause, and how it should be analyzed under Texas law. Sampson argued that the scope of the clause should be narrowly construed at length in her response to defendants' motion to transfer:

> Every single one of the sentences in the "Entire Agreement" paragraph references the Agreement:
>
> > <u>Entire Agreement</u>. **This Employment Agreement** contains the entire agreement of the parties. No other agreement, statement or promise made on or before the effective date of **this Agreement** will be binding on the parties. **This Agreement** may be modified by a subsequent written agreement signed by Attorney and Client, and may be supplemented by a subsequent written agreement signed by Attorney and Client, including but not limited to a Notice and Consent to Attorney Association. The provisions of **this Agreement** will not terminate upon the death of the Client or the Client's

> spouse. In the event of the death of Client, any duly appointed Representative of the Client's Heirs and/or Estate will be bound by **this Agreement** to the extent provided by applicable law. In particular, any such Representative will be bound by the provisions of **this Agreement** relating to the recovery of attorneys' fees, costs, and other expenses. **This Agreement** shall be construed in accordance with the laws of the state of Texas, and venue for any dispute shall be in Dallas County, Texas.

Ex. 3 at 5 (underlining in original, bold added). Texas courts follow the standard canons of statutory construction. *City of Houston v. Bates*, 406 S.W.3d 539, 545 (Tex. 2013) ("When general words follow specific, enumerated categories, we limit the general words' application to the same kind or class of categories…."); *HJSA No. 3, Ltd. Partnership v. Sundown Energy LP*, 587 S.W.3d 864, 871 (Tx. App. 2019) ("controlling effect must be given to specific provisions over general provisions."); *CKB & Assocs., Inc. v. Moore McCormack Petroleum, Inc.*, 734 S.W.2d 653, 655 (Tex.1987) (noting the maxim *expressio unius est exclusio alterius*); *cf. Smart v. Gillette Co. Long-Term Disability Plan*, 70 F.3d 173, 178 (1st Cir. 1995). While these canons of contract construction are not controlling, they are *persuasive* because contract meaning is derived from the context in which words are presented.

…every contextual clue pushes a reasonable client to the conclusion ***that the forum selection clause is, like the choice of law clause and every other part of paragraph 21, limited to the agreement.***

Doc. 25 at 14-16 (bolded italics added). Plaintiff argued scope under Texas law right from the start. Since the *validity* of the forum-selection clause is a question of Federal law, plaintiff cited and relied on Texas law extensively to argue that the *scope* of the clause did not reach her tort claims. *In re Howmedica Osteonics Corp.*, 867 F.3d 390, 407 n.11 (3d Cir. 2017). That defendants felt the need to mischaracterize plaintiff's position is telling.

Texas law regarding the interpretation of the terms of attorney engagement agreements is protective of the reasonable expectations of clients in connection with forum-selection clauses. *Falk & Fish, L.L.P.*, 317 S.W.3d at 529. Texas law is particularly protective where, as is also true here, clients are presented with 1) an already drafted engagement agreement; 2) clients did not view the agreement as negotiable; 3) attorneys do not specifically raise or call out the issue of forum selection; and 4) the clients are unsophisticated consumers of legal services. *Id.* As plaintiff noted in her surreply:

> The defendants are unable to muster a case where a Court held forum-selection language unambiguous on facts analogous to those here: 1) 1-sentence combination choice of law and venue sentence; 2) at the tail end of a 7 sentence paragraph headed "Entire Agreement"; 3) every sentence in the paragraph references "this Agreement"; 4) in an attorney engagement agreement. Such a case likely does not exist….

Doc. 27 at 7-8.[2] There is no controlling case law that matches the facts of this case.

Defendants also ignore that plaintiff argued that transfer should be denied based on public-interest factors. Sampson's response to defendants' motion to transfer argued:

> Public interest factors [2] practical considerations that could make the trial easy, expeditious, or inexpensive; [3] the relative administrative difficulty resulting from court congestion; and [4] the local interest in deciding controversies at home are highly relevant and overwhelmingly favor the Eastern District of Pennsylvania.

---

[2] Defendants fail to cite such a case in their mandamus petition.

Doc. 25 at 23. The response then included two pages of substantive discussion about how those factors favored this forum. *Id.* at 23-25. (discussing public interest factors). Defendants simply pretend that plaintiff did not make this argument or that the Court did not rely on it.[3]

Mandamus is, of course, an "extraordinary remedy" that requires a "clear and indisputable 'abuse of discretion or…error of law.'" *In re Howmedica Osteonics Corp.*, 867 F.3d 390, 401 (3d Cir. 2017). Here, interpreting the scope of forum-selection clauses in attorney engagement agreements is an inquiry under Texas law that depends on the "client's circumstances." *Falk & Fish, L.L.P.*, 317 S.W.3d at 529. There is also no controlling authority regarding the interpretation of a forum-selection clause like the one at issue on facts analogous to those here. Doc. 27 at 7-8. Particularly in the context of a forum-selection clause that is either ambiguous or unambiguously limited to contract claims, the public-interest factors weighing

---

[3] In their mandamus petition, defendants argue that plaintiff's failure to make her argument about the public-interest factors in the same section of her written response as her discussion about the scope of the forum selection clause itself waives any argument on the public interest factors. Even leaving aside the fact that plaintiff explicitly pointed to the public interest factors in connection with her discussion of the forum-selection clause in her surreply, (Doc. 27 at 8), the case they cite *United States v. Lockett*, 406 F.3d 207, 212 (3d Cir. 2005) involves the failure to raise an argument at all prior to appeal. Defendants' waiver position is overly formalistic. It also has no effect on how this Court may have relied on the public interest factors argument plaintiff made in denying defendants' motion to transfer based on the forum-selection clause.

strongly in favor of this forum are significant.[4] It is difficult to imagine the Third Circuit wading into such fact-bound waters on mandamus without the guidance of controlling legal authority. Defendants' own conclusion about their likelihood of success is unsupported.

### b. Defendants' Claimed Harm is Largely Self Inflicted

Defendants' claims of harm presuppose that 1) the forum-selection clause means what *they* say it means rather than how a "reasonable person in the client's circumstances" would understand it, or 2) that they will win on the merits of their mandamus petition. Neither position is correct as set forth above.

Much of the remainder of defendants' claims of harm boil down to complaining about the case schedule. They complain that they received 13,000 pages of documents from plaintiff on August 31. Of course, they forget that the reason that they did not get discovery sooner is that they refused to participate in the discovery process until ordered to do so by the Court. Doc. 32. Many of defendants' complaints are similarly self-inflicted and the result of their own tactical decisions.

### c. Plaintiff is Harmed by a Stay

The defendants' assert that a "stay" will not cause harm to plaintiff. But a stay will inevitably delay the resolution of plaintiff's claims. *In re Countrywide Home*

---

[4] This is particularly true since plaintiff has agreed to the dismissal of her contract-based claim for breach of the covenant of good faith and fair dealing in connection with her request for leave to file her First Amended Complaint. Doc. 48.

*Loans, Inc.*, 387 B.R. 467, 477 (W.D. Pa. 2008) (noting absence of harm because stay would not interfere with a parties' ability to proceed in a separate proceeding). Plaintiff has no alternate recourse to resolve her claims if a stay is entered.

### d. The Public Interest is Served by Maintaining the Case Schedule

While defendants mention that the trial date is only three months away, they fail to recognize that such a schedule serves the public interest. Doc. 49 at 8. Expeditious proceedings are a *good* thing and serve the interests of both the parties and the public. Fed. R. Civ. P. 1 (purpose of the civil rules is to promote the "just, speedy, and inexpensive determination of every action"); *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d. Cir. 1995) (public interest factor: "practical considerations that could make the trial easy, expeditious, or inexpensive"). The public interest is served by the current case schedule and weighs against entering a stay.

### CONCLUSION

Without a stay, if defendants ultimately prevail on their mandamus petition, the case will go to the Northern District of Texas trial ready. A stay, particularly an "emergency" stay the day before the end of discovery closes is inappropriate and unnecessary.

Dated:  September 9, 2020

/s/ *Nicholas S. Boebel*
Nicholas S. Boebel (pro hac vice)
**Hansen Reynolds LLC**
225 South Sixth Street, Suite 3900
Minneapolis, MN 55402
Telephone: (206) 268-9320
nboebel@hansenreynolds.com

Matthew Weisberg
Pennsylvania Bar No. 85570
WEISBERG LAW PC
7 South Morton Ave.
Morton, PA 19070
610-690-0801
Fax: 610-690-0880
Email: mweisberg@weisberglawoffices.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on September 9, 2020, the foregoing memorandum was filed electronically and served on all counsel of record via the Court's CM/ECF system.

Date: September 9, 2020

/s/ *Nicholas S. Boebel*
Nicholas S. Boebel