IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CAROLYN SAMPSON, : | |
|     Plaintiff, : | |
| : | |
|     v. : | Civ. No. 20-2232 |
| : | |
| HAGENS BERMAN SOBOL SHAPIRO, LLP : | |
| et al., : | |
|     Defendants. : | |

**O R D E R**

In its "Emergency Motion," the law firm Hagens Berman asks me to stay this litigation while the Firm seeks mandamus review of my denial without prejudice of its venue dismissal motion. This is the Firm's second mandamus petition in these related Thalidomide cases. The Third Circuit rejected the first petition. (Civ. No. 11-5782, Doc. No. 510); <u>In re Alexander</u>, No. 15-2245, 2015 WL 3479384 (3d Cir. May 29, 2015). Hagens Berman bases its present venue contention on a fee agreement that seems to have nothing to do with this case, and to which the Firm is not even a party. It thus appears that Hagens Berman seeks to stay this litigation for the same reason it sought mandamus previously: to frustrate a discovery process that has already revealed gross misconduct by the Firm.

**I.**     **Background and Procedural History**

The tortured history of this matter dates back almost ten years. I will not detail that history, which now encompasses some 900 docket entries. What began as a group of products cases based on *in utero* injuries claimed to have been suffered some 60 years ago (when each plaintiff's mother allegedly ingested Thalidomide), has expanded to endless litigation respecting the Firm's refusal to provide the most basic discovery, the absence of a good-faith basis for pursuing at least some plaintiffs' claims, the imposition of sanctions, questionable voluntary dismissals and contested motions to withdraw, evidence-tampering, false swearing, and accusations of negligent

representation.

The then-existing Texas firm of Gordon & Reeves LLP (through its partner Kay Gunderson Reeves) had originally recruited some of the 52 plaintiffs in the Thalidomide cases, and had apparently shopped their claims to Hagens Berman and local counsel, Spector, Roseman, Kodroff & Willis.  On October 25, 2011, Ms. Reeves (previously a Defendant in the instant case) filed the first of the multiple Thalidomide products cases—including on behalf of Ms. Sampson—in the Philadelphia Common Pleas Court.  (Doc. No. 1.)  The defendants—GlaxoSmithKline and other domestic and foreign manufacturers and distributors of Thalidomide—removed to this Court, where the cases were assigned to different Judges, including me.  (See Civ. No. 11-6711; Civ. No. 11-5782.)  The plaintiffs, represented by Hagens Berman, moved for remand of all the cases.  (Civ. No. 11-6711, Doc. No. 29; Civ. No. 11-5782, Doc. No. 17.)  Judges of this Court came to conflicting decisions regarding whether diversity jurisdiction existed (*i.e.*, where GSK's "nerve center" is located).  I denied remand and certified the question for interlocutory review.  (Civ. No. 11-5782, Doc. No. 63.)  The plaintiffs appealed my denial Order.  (Civ. No. 11-5782, Doc. No. 64.)

The Third Circuit accepted the appeal and upheld my decision that diversity was present. (Civ. No. 11-5782, Doc. No. 75); Johnson v. SmithKline Beecham Corp., 724 F.3d 337 (3d Cir. 2013).  All pending Thalidomide cases were then consolidated before me.  (Civ. No. 11-5782, Doc. No. 88.)  The defendants moved to dismiss all claims as time-barred.  (Civ. No. 11-5782, Doc. No. 74.)  Because each plaintiff had expressly pled fraudulent concealment and other conduct that would toll the limitations clock, I denied the dismissal motions without prejudice.  (Civ. No. 11-5782, Doc. No. 92.)  The defendants were free to renew the motions upon learning through discovery when each plaintiff learned or should have learned that Thalidomide caused his or her birth defects.

Unfortunately, Hagens Berman repeatedly refused to provide the defendants with the most basic information relevant to their limitations defenses, to the point that the defendants finally sought dismissal of all cases as a sanction. (See Civ. No. 11-5782, Doc. No. 239.) Instead, I appointed William T. Hangley as Special Discovery Master, without objection from the parties. (Civ. No. 11-5782, Doc. No. 256.) Mr. Hangley promptly began by ordering the defendants to produce requested information relating to the timeliness of the plaintiffs' claims.

As Hagens Berman finally began complying with discovery requests, numerous cases had to be dropped or involuntarily terminated because the actual facts differed critically from the allegations in the plaintiffs' complaints. (See, e.g., Civ. No. 11-5782, Doc. Nos. 265, 277.) That, in turn, led two of the defendants to seek sanctions against Hagens Berman, but not against the Firm's clients. (Civ. No. 11-5782, Doc. Nos. 258, 293, 310.) I referred those sanctions motions to Mr. Hangley as well. (Civ. No. 11-5782, Doc. No. 216.) He ultimately recommended the imposition of sanctions and I agreed. (Civ. No. 11-5782, Doc. Nos. 414, 483.)

While the sanctions motions were before Mr. Hangley, Hagens Berman "settled" with GSK, agreeing that the Company would not pursue pending or any future sanctions motions against the Firm if all but one of Hagens Berman's clients dropped their products claims against GSK. (Civ. No. 11-5782, Doc. No. 394). The "settlement" was disturbing: it apparently benefited Hagens Berman to the detriment of its clients. I thus ordered Special Master Hangley to look into the question whether these whether the decisions by these plaintiffs to surrender their claims against GSK were actually voluntary and informed. (Civ. No. 11-5782, Doc. Nos. 396, 420.) Hagens Berman objected and sought mandamus, urging that Mr. Hangley's inquiry would violate, *inter alia*, the attorney-client privilege. The Third Circuit denied mandamus relief. (Civ. No. 11-5782, Doc. No. 510); In re Alexander, 2015 WL 3479384. Mr. Hangley pursued his inquiries, taking *in camera* testimony from each of the plaintiffs whose claims were to be dismissed. As.

Mr. Hangley describes, in the ensuing months, Hagens Berman continued attempting to impede his investigation.

The Firm also sought to withdraw from representing several of the plaintiffs, based on unexplained "professional considerations," but the clients refused to agree. Once again, I assigned those contested motions to Mr. Hangley for a report and recommendation. This led to an extended *in camera* hearing at which the "professional considerations" and the attorney-client dealings were discussed outside the presence of the defendants. In the course of *that* hearing, a Hagens Berman attorney gave false testimony. Moreover, it was later disclosed that the lawyer had tampered with documents—expert reports—and placed them in evidence as genuine. (Civ. No. 11-5782, Doc. No. 588 at 7.) Needless to say, that revelation has led to further hearings.

Carolyn Sampson is one of the plaintiffs in the Thalidomide litigation, and has testified before Mr. Hangley both in his investigation into the proposed GSK dismissals and his ongoing hearing. Ms. Sampson filed the instant, separate Complaint against Hagens Berman, partner Steve W. Berman, and Ms. Reeves in this Court on May 11, 2020. (Doc. No. 1.) Ms. Sampson alleged breach of fiduciary duty, civil conspiracy, and other torts. (Id.) On July 30, 2020, Hagens Berman moved to dismiss on various grounds, including lack of jurisdiction and venue, and in the alternative, to transfer venue. (Doc. Nos. 17, 18.) The Firm based its venue contentions primarily on the "Attorney Employment Agreement" between Ms. Sampson and Gordon & Reeves LLP—Ms. Reeves' Dallas-based law firm, which, at that time, was the only firm representing Ms. Sampson. The Agreement (which I have appended) is on Gordon & Reeves letterhead; it explicitly binds the Texas firm of Gordon & Reeves, notes that "Attorney" (defined as Gordon & Reeves) is "licensed to practice in the State of Texas," provides contact information for Texas disciplinary authorities, should the client believe she was the victim of "misconduct committed by Texas attorneys," and states that any disputes shall be in the venue of "Dallas County, Texas." Hagens

Berman—a Seattle, Washington based firm—had not yet been engaged in the Thalidomide litigation and was not mentioned in the Agreement—which Ms. Sampson signed—nor was Spector, Roseman.  Approximately three weeks later, Ms. Reeves informed Ms. Sampson that the case would be taken over by Hagens Berman "as litigation counsel."  Ms. Reeves asked Ms. Sampson to sign a "Client Consent Form" authorizing Hagens Berman to represent her.  (Letter and form appended.)  Neither the letter nor the form included a venue provision.  Rather, the letter was primarily an endorsement of the Firm; the form focused entirely on Hagens Berman's right to share fees with Gordon & Reeves.  As I discuss further below, although these documents suggest that Ms. Reeves may have had a valid venue argument under the Agreement, it is highly doubtful that Hagens Berman does.  Moreover, because Ms. Sampson has settled her dispute with Ms. Reeves, the Agreement's venue clause appears to have little to do with the instant case.  (See Doc. No. 52.)

In disputing Hagens Berman's venue contentions, Ms. Sampson argued, *inter alia*, that discovery would show that because she did not understand the venue clause in the Agreement, it was invalid under Texas law.  Indeed, the Agreement itself is less than clear.  For instance, it provides that even if Gordon & Reeves associates with new counsel, the "provisions of this…Agreement…will still apply."  Yet, it does not indicate to whom the Agreement "will still apply."  Gordon & Reeves is explicitly identified as the "Texas Attorney" in the Agreement, not Hagens Berman, which has no Texas office.  It does not appear that any of the Hagens Berman attorneys before me is a member of the Texas Bar, although the Agreement on which Hagens Berman now relies explicitly states that "Attorney is licensed to practice law in the state of Texas."

Finally, although the Agreement provides that "venue for any dispute shall be in Dallas County, Texas," it is difficult to determine what "any dispute" means.  Ms. Sampson thus plausibly contends that her instant claims—all of which sound in tort—are not covered by a contractual

5

venue clause which appears to speak only to disputes over how "[t]his Agreement shall be construed."  Because discovery was needed to shed light on these questions, I denied Hagens Berman's venue argument without prejudice, allowing the Firm to renew its venue motions after discovery.  (Doc. No. 35.)  Hagens Berman now seeks mandamus review of that decision, arguing that venue transfer is mandatory, and apparently asserting (incorrectly) that I denied its Motion to Transfer Venue with prejudice and without any discussion.  (See Doc. No. 49.)  In the instant "Emergency Motion," Hagens Berman asks me to stay the instant litigation pending its pursuit of mandamus relief.  (Id.)  Ms. Sampson opposed the Firm's Motion, and Hagens Berman filed a reply.  (Doc. Nos. 53, 54).

**II.     Discussion**

I must consider four factors when deciding a motion to stay pending appeal:  (1) whether the movant has shown a likelihood of success on the merits; (2) whether the movant will suffer irreparable harm without the stay; (3) whether a stay would cause substantial harm to other parties in the litigation; and (4) whether a stay benefits the public interest.  In re Revel AC, Inc., 802 F.3d 558, 565 (3d Cir. 2015).  The Third Circuit has adopted a "sliding scale" approach to these factors: "[t]he more likely the plaintiff is to win, the less heavily need the balance of harms weigh in [its] favor; the less likely [it] is to win, the more need it weigh in [its] favor."  Id.  (quoting Roland Machinery Co. v. Dresser Industries, Inc., 749 F.2d 380 (7th Cir. 1984) (alterations in original)).

Because Hagens Berman has not met these criteria, I will deny the stay.

**A.  Likelihood of Success**

Hagens Berman has not shown a likelihood of success on the merits.  Relying exclusively on the venue clause in an Agreement between Ms. Sampson and Ms. Reeves, the Firm asserts in its "Emergency Motion" that the clause controls under Atlantic Marine Construction Company, Incorporated v. U.S. District Court for the Western District of Texas, 571 U.S. 49 (2013).  The

Supreme Court there admonished that "venue is proper so long as the requirements of § 1391(b) are met, irrespective of any forum-selection clause." Id. at 57.  At the same time, "[i]n all but the most unusual cases . . . 'the interest of justice' is served by holding parties to their bargain." Id. at 66.

Here, the venue language was included in an Agreement between Ms. Sampson and her former counsel, Ms. Reeves.  Hagens Berman was and is not a party to the Agreement, nor is local Pennsylvania counsel, Spector, Roseman.  The only agreement that exists between Hagens Berman and Ms. Sampson is a one-page "Client Consent Form" by which Ms. Sampson consented to the division of fees among Gordon & Reeves LLP, Hagens Berman Sobol Shapiro, and Spector, Roseman.  (See Doc. No. 17-5.)  The form does not explicitly or impliedly incorporate the terms set out in the Agreement between Ms. Sampson and Ms. Reeves.  Although successor counsel can be bound by the terms of a prior fee agreement if it is a third-party beneficiary of the contract, it is by no means clear that Hagens Berman was an intended third-party beneficiary at the time the contract was executed.  See In re McGraw-Hill Global Education Holdings LLC, 909 F.3d 48, 59 (3d Cir. 2018); E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S., 269 F.3d 187, 196 (3d Cir. 2001) (discussing intended third-party beneficiaries in the context of arbitration clauses); Fleetwood Enterprises, Inc. v. Gaskamp, 280 F.3d 1069, 1076 (5th Cir. 2002) ("[T]he intent to make someone a third-party beneficiary must be clearly written or evidenced in the contract. Otherwise, Texas will not recognize that person as a third-party beneficiary."); Zinante v. Drive Elec., L.L.C., 582 F. App'x 368, 371 (5th Cir. 2014).  Moreover, as I have explained, there are other significant problems respecting the application here of the Agreement's venue claim.  In the absence of any evidence that might be revealed in discovery, it presently seems that the venue selection clause does not apply to Hagens Berman—which is plainly not the "Texas Attorney" described in the Agreement.  See In re McGraw-Hill, 909 F.3d

7

at 63 (declining to enforce forum selection clause against non-signatory that was "not in an ownership or subsidiary relationship" with the signatory, was apparently not involved in contract negotiations, and was not an intended beneficiary on the face of the agreement); Harrison v. Procter & Gamble Co., 2007 WL 431085, at *3 (N.D. Tex. Feb. 8, 2007) (disallowing parent company from enforcing a forum selection clause where parent company purchased subsidiary after the execution of the contract and where subsidiary did not explicitly assign the contract to parent).

In the absence of a valid forum selection clause, I have broad discretion to determine whether to transfer venue.  SKF USA Inc. v. Okkerse, 992 F. Supp. 2d 432, 447 (E.D. Pa. 2014). Venue is proper, *inter alia*, in a "district in which a substantial part of the events or omissions giving rise to the claim occurred."  28 U.S.C. § 1391.  Ms. Sampson bases her claims against Hagens Berman almost entirely on the Firm's representation of Ms. Sampson in the related Thalidomide litigation still pending before me.  (See Civ. No. 11-5782.)  Accordingly, a "substantial part" of the events giving rise to the instant Complaint occurred in this district.

In these circumstances, I conclude that because venue is likely proper here (pending Hagens Berman's discovery efforts), Hagens Berman has not shown a likelihood of success on the merits of its venue contentions.

### B.  Irreparable Harm

There is neither an "emergency," nor the threat of any harm here in the absence of a stay. Hagens Berman has continued to participate in discovery since my August 27 Order denying its Motion to Dismiss.  The sky has not fallen.  Hagens Berman has not alleged any harm beyond the mere fact that the litigation will continue in this Court while the Firm petitions for mandamus. (See Doc. No. 49.)   This is not irreparable harm.  See Minard Run Oil Co. v. U.S. Forest Service, 670 F.3d 236, 255 (3d Cir. 2011); Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 22 (2008).

### C. Harm to Other Parties

I must also consider the harm to Ms. Sampson and balance that harm against any possible harm to Hagens Berman. See In re Revel AC, Inc., 702 F.3d at 570. Ms. Sampson notes that "a stay will inevitably delay the resolution of plaintiff's claims." (Doc. No. 53.) Normally, delay alone does not constitute undue prejudice to a plaintiff. See, e.g., Calamos Asset Mgmt. Inc. v. Travelers Casualty and Surety Co., 2020 WL 3470473, at *6 (D. Del. 2020). Because Hagens Berman refused to comply with Ms. Sampson's discovery requests—causing me to admonish the Firm that its obstructive conduct could result in the imposition of sanctions—Ms. Sampson has only now received some of the discovery she seeks. (Doc. No. 48-2, ¶ 8.) An unnecessary stay in this matter would simply cause further delay for no good reason. Moreover, given the lack of irreparable harm to Hagens Berman and its low likelihood of success on the merits, the balance of harms does not weigh in favor of a stay.

### D. Public Interest

The public interest in favoring efficient judicial proceedings and disfavoring dilatory tactics weighs heavily against a stay.

### III. Conclusion

And now, this 11th day of September, 2020, it is hereby **ORDERED** that Defendant's Emergency Motion for Stay (Doc. No. 49) is **DENIED**.

**AND IT IS SO ORDERED.**

*/s/ Paul S. Diamond*
_____
Paul S. Diamond, J.

9